Alkutkar v. Bumble, Inc. Well, one more point on the, if I may, on the unique credentials. That issue comes up under when the court is trying to authenticate either an electronic record or an electronic signature. And just like if somebody comes to court with a signature on a paper contract, there's authentication of that signature. Here, we don't even reach the issue of authentication because Bumble did not produce any record of plaintiff actually clicking the I agree button. And Bumble — Right, but that's the question is whether it needed to do that, right? Right. Well, we would note that every single case that's cited in all of the briefing, the plaintiffs, the defendants always produce either an electronic record or an electronic signature. And in fact, when Bumble first moved to compel arbitration, it stated that it did have records of when users clicked the blocker card. All right. Get to my question. I want to make sure that I get your answer before your time runs out. The question was, yes, in effect, because Bumble does not have an electronic record of him actually clicking the blocker card, it is relying on an inference. And that inference, Your Honor, is flawed. Allow me to demonstrate this. According to Bumble, after it implemented the arbitration clause in January 2021, every user who opened the app for the first time would have to click it in order to continue using the Bumble app. So according to Bumble, because plaintiff had some activity, he must have clicked the blocker card. But consider this. When a user is presented with a blocker card, that user has two options. They can agree to the terms and click the button, or they can close the app and not agree to the terms. But what happens when a user who did not agree opens the app for a second time? How would Bumble software know to show the blocker card again? Unless Bumble kept records of which users clicked the blocker card and which users did not, the software would have no way of distinguishing who agreed to arbitration and who did not. And this is precisely why, in its second declaration, Bumble submitted a stated that it merely had indicators of whether certain, not all, whether certain users clicked the blocker card. And, Your Honors, this is a fatal – So let me make sure – slow down a second. Let me make sure I understand what it is that you're saying. If you close the app and you open it again, you can actually engage in activity without clicking a cent in the blocker card. That's your position? That is – So you're challenging the accuracy of the Wong declaration? Absolutely, Your Honor. That is a logical conclusion. Now, plaintiff never viewed the blocker card in the first place. But what we're saying is, even taking Bumble's theory as true, it doesn't – it's impossible that they could actually know who clicked the blocker card and who did not. For example, if Bumble has no records of who clicked the blocker card and who did not, how would the software know who to prevent from using the app and who to allow to use the app? The answer is simple. Bumble has no way of knowing. It's clear that the blocker card doesn't work the way that Bumble intended, and this is corroborated by five other Bumble users who submitted sworn testimony saying that they were able to use the Bumble app without ever having clicked the blocker card. Just going back to the face of the declarations that Bumble put forward, what do you contend is insufficient there? Because as I understand it, their argument backed by code and other things is to say, if you – we set this up so that if you opened it up again and you then accessed it after a certain date, you had to have clicked through that. We don't have a piece of code that tells us you did click through it, but the fact that you got to the other side shows that you went through that process. Your Honor, it's correct that the only code that Plaintiff or that Defendant was able to produce was Plaintiff's activity on the app. And I would urge the Court to review that metadata for itself. It's in the record at 4ER567 because all it shows is five lines of metadata, and it just shows that a user ID with – that purportedly belongs to Plaintiff had some activity on the app. But activity – So it does show that the login credentials were unique to AccuR and were used in March of 2021. Wasn't that presented as the evidence in the case? Yes, Your Honor. We have to distinguish between used and entered. But the evidence was produced that was entered in March of 21 that the blocker card was in effect at that time, correct? Bumble alleges that it was used, but again, distinguishing between used and entered – Bumble alleges they produced evidence to the effect that it was used and entered in March of 2021, correct? Yes, but used is different from entering. I understand the distinction you're seeking to draw. I understand. And so, yes, anytime anybody's using the Bumble app, they are using the credentials that are tied to their account. But Bumble never alleges that any user was required to enter credentials before signing in and clicking the blocker card. And the distinction between entering credentials and the fact that somebody's account is tied to credentials is an important distinction. Because if they don't have to enter unique credentials, then there's no way of confirming who actually clicked the blocker card. But again, that goes to – But, I mean, there's not evidence – you haven't put forward evidence that somebody else clicked the blocker card. Somebody using his account did. I mean, there's a suggestion that maybe he left his phone around and somebody else might have done it. But there's really no concrete representation about that. Plaintiff does not know why the blocker card was never displayed on his phone and why he was able to continue using the app. He's looked at the allegations, but it's Bumble's burden to actually prove that the blocker card was clicked. And this is the only case – Right, and they put that in in the form of the Wong Declaration. I'm looking now at ER 597, lines 18 through 22. Plaintiff would not have been able to access and be active on his Bumble app on those particular dates unless he accepted the blocker card. Right. Moreover, he would not have been able to purchase. So I guess my question is what evidence was put into the record to create now a triable question on whether he accessed. He had activity, right? In order to get to that activity, he had to have clicked I accept. That's the evidence they put forward. And I started the hearing by acknowledging these are a chain of inferences because they didn't put in the actual record. But they did put in the underlying metadata. They put in an expert declaration explaining how it works. And according to their declaration, you can't get to the activity that he engaged in without going past the blocker card. Now, had you put in declarations saying, well, I picked up from somebody else saying I picked up his phone, I regularly use it, I play with his Bumble account, that might be a different record. But we don't have that in this case. The evidence that Plaintiff submitted was a sworn declaration where he unequivocally denied that he ever clicked the blocker card. And in addition, he submitted the sworn testimony of five other users, three of whom specifically tested the inference that Bumble is making. And what they found was that just like Plaintiff, they were able to use the Bumble app without ever viewing or clicking the blocker card. In other words, they demonstrated that the blocker card doesn't function as Bumble claims. Now, going to Bumble's evidence, Bumble has no record of the blocker card. And they did not submit any metadata showing that the blocker card was displayed. They didn't submit any metadata showing that the blocker card was submitted. They didn't submit or produce the source code to show that it actually functions the way they say it does, nor did they even submit the testimony of a witness who reviewed the source code. So Bumble, the declaration of Christian Wong fails to lay any foundation for those statements. In short, Bumble is asking this Court to fill all of the evidentiary gaps with an assumption. That assumption is the blocker card works because we say it does. But that assumption is not just unsupported without any evidence because this is the only case where the defendant is unable to produce an electronic record. That evidence or that assumption is contradicted by the sworn testimony of Plaintiff and five other Bumble users. I'd like to reserve the rest of my time for rebuttal. All right. Thank you, counsel. Good morning, Your Honors. Kyle Wong on behalf of the appellees. The plaintiff has just articulated, I think, a pretty radical and upending view of summary judgment in a motion to compel arbitration context. He is essentially contending that when, as Your Honors have already noted, the defendant has put in affidavits or declarations that establish certain electronic facts and records. Well, he does raise a reasonable authentication issue. Does Bumble not keep these records? Your Honor, in that, they keep a record of the blocker card being shown. They do not have a record of the blocker card being clicked on to say I accept. But I don't think electronic signatures are not required. So they don't keep the records of the user's acceptance, or they do keep it but just can't find the one in the case here? They do not keep records of the click on the I accept button. What evidence is kept with respect to Alcantara's electronic signature, for example? There's a record as to that that was introduced, correct? There's a record of him no, Your Honor. There's a record of his unique credentials. Those are the Facebook credentials. So when he signed in, as Judge Brest noted cogently, when you create an account, you can create an account using a unique username and password that you create just for Bumble, or you can also use your unique usernames and passwords from other Internet platforms to be your unique username and password for the Bumble app. Mr. Alcantara chose to use his unique Facebook username and password for his Bumble account. And whether or not he had to enter it in to open the Bumble app, he certainly had to have at least been logged into Facebook and to have entered in his unique credentials to then have Facebook verify that he is the user that he purports to be, and then that verification is passed on to Bumble to allow him to use the app. So and I think one thing that should be clear is that Mr. Alcantara actually submits a screenshot of the sign-in page as he saw it, as he purports to have seen it, in March of 2021. That's ER-301. If Your Honors look at that document, it makes very clear that he was not logged in to his Bumble account at the time because very prominently in the middle of that screenshot, it says, you last logged in using your Facebook account, indicating that he was not logged in and that he had to log back into his account to access the app. And below that line, you see continue with Facebook. That allows you to click on that button and you either already are logged in to Facebook, having used your unique password and user ID, or you have to enter in your actual Facebook information at that juncture. And I would note that Bumble doesn't just keep records of unique credentials. It also keeps records of a device ID and a user ID, both of which are unique. I find it a bit surprising that you here as the party advancing the application with the arbitration clause to put in all the metadata, all of the other information and not the actual page where he assented. So what do we do with the fact that he put in the declaration, because we're now relying on a chain of inferences, which I think the district court really well laid out. What do we do with the fact that he's now trying to counter the inferences with his own declaration and the other declarations as well? And his declaration says he never assented, never clicked on the I agree button. And if he had, he would remember and then he put in these other declarations of other users. What do we do with that fact? Sure. Well, first of all, I think the blocker card is the same. The blocker card and the I accept button appear on the same screen. So it's not that Bumble does not have a record of the page in which he clicked I accept on. It does have a record of it being shown. And that so the blocker card has a statement that says, you know, to use Bumble, you must agree to our terms. And it noted that there was an arbitration clause. It was a very succinct four-sentence notice that was prominent. It was in legible font.  That's not an issue. The issue is whether he assented, right? Right. But I was just letting Your Honor know that Bumble does have a record of showing the blocker card, which includes the I accept button, to Mr. Althakar. I understand. I understand that. The question really is the assent. So now we have a chain of inferences that he must have assented because he engaged in activity that you wouldn't be able to engage in, per your evidence, and the Wong declaration in particular, if he hadn't gotten past the blocker card, right?  So to counter the chain of inferences, he's put forward his own declaration and these other declarations that he referenced earlier in his argument. What do we do with those declarations? First, his declaration is conclusory and says only that he denies seeing the blocker card. And then he says, kind of muddying the waters of whether or not it's a denial or just a failure to recall, he says then that he, if he had been presented with a blocker card, he believes he would have recalled that, which under Ninth Circuit precedent is insufficient to create a tribal issue of fact. Now, I think when you look at the other cases in which a bare — well, first, there is no case where a bare denial of seeing an agreement, a notice of an arbitration agreement, an assent is sufficient to negate that consent. I think he's actually a pretty radical proposition if you pause to think about it. If a person can just come in and say, I never saw the terms of service, I never saw the I accept button, I never clicked on that, then you're going to open the floodgates to arbitration agreements in the electronic context being contested merely because the plaintiff has stated that he did not see the click button, the I agree button, didn't see the notice, no matter how much evidence you've put in of electronic records that demonstrate that that was the case. And even if we think that that's a bit thin, is it bolstered by these other declarations, or do they suffer from the same deficiencies? Well, I think, first, with his declaration also, and I will get to your question, Your Honor, he — he knew the exact date and time that Bumble alleged the blocker card was shown to him. It's March 4th, 2021, at 227 p.m. Pacific time. He could have gone back to his records to say, I was on a plane, I was scuba diving, I was in the hospital, I — or this person had access to my phone at that time and that person saw the blocker card. He did not put in any of that evidence. And so his declaration in and of itself is too thin to — to — to give credence to move to a tribal issue of fact. Now, as to the other five, I wanted to address Your Honor's question, three of them merely say, to the best of my recollection, I don't recall seeing the blocker card. That, again, is not sufficient under Ninth Circuit precedent to create a tribal issue of fact. Those individuals merely say, just to the best of their recollection, they don't recall. The other two didn't open their apps until almost a year or actually more than a year after March 4th, 2021. Their experiences with the app 14, 16 months later is immaterial and irrelevant to whether or not Mr. Alcocar saw the blocker card in — on March 4th, 2021. And again, we have an electronic record of which the plaintiff has not been able to say was altered. He doesn't explain how it got into Bumble's records. He does not — he didn't seek the code at — at the trial court level. He didn't seek any discovery on that. But what we have put forward is two engineers who are familiar in their jobs with Bumble's records, how they're stored, how they're kept, how they're created. And they reviewed those records and produced records showing that the blocker card was in place at the time of March 4th, 2021. They also put in that he had — that they had searched for his device I.D. and user I.D. to find his individual records within Bumble's app and found that the blocker card had, in fact, been shown to him. So, again, I think it's a very radical proposition that the plaintiff is pushing here, which is the notion that you can just get five random Bumble users who, you know, either based on pure recollection or opening an electronic app a year later to say that a certain thing did not occur on March 4th, 2021. And then plaintiffs just bear assertion that he did not see it when he logged in. I guess the plaintiffs, with respect to Wong, would say, I think, that it shows that this blocker card was in place, but it doesn't necessarily show that the blocker card was — the metadata doesn't show that it was put to Al-Qudkar specifically. But I take it you disagree with that? Yes, Your Honor. That's how we know it was at 2.27 p.m. And so it was individual to his record. If you look at that piece of metadata, it does have his unique user I.D. and his, I believe, device I.D. So those do connect that individual record with Mr. Al-Qudkar. And also, I just wanted to respond to one thing that opposing counsel had noted. Nowhere in the record is this notion that you can open and reopen the Bumble app, first open it, not click on the blocker card, close the app and reopen it, and suddenly the blocker card disappears. That's not something he's contended that Mr. Al-Qudkar did. As I think you noted when you pressed him a little bit on it, he hesitated because that's nowhere in the record and is not a fact that Your Honors should rest on and is not also how I believe the blocker card worked. So I just wanted to reiterate that Mr. Christian Wong, the Christian Wong Declaration makes clear that in reviewing Bumble's records, including code, that you could not, as Judge Nguyen noted, you could not swipe on profiles, you could not upload photos, you could not do any activity on the application without having clicked the blocker card. Notably, Mr. Al-Qudkar does not contest that he was the individual who used the app on March 4th, 2021. He never contests or denies that he was the one that uploaded photos or swiped on profiles, so he does not contest that evidentiary record. And then lastly, I would note that while we do not have the electronic signature, there is no case law that says that absent electronic signature, you cannot enforce an arbitration agreement. In fact, California law is very clear that you can accept contracts in a myriad of ways, including by conduct. If you note that the blocker card itself does say, by using our services, you must agree to our terms, I think that was sufficient notice to him that if he continued to use it, including by clicking on the blocker card, that his conduct would be conducive to consent. If Your Honors don't have any other questions, I can rest. Thank you. All right. Thank you, counsel. Thank you. Your Honors, I'd just like to address a couple points, the first being the evidence that Bumble submitted. Bumble did not produce a record of the blocker card being shown on Plaintiff's device. If they have that record, it was not produced. And one of the questions is, why not? And paragraph 17 of the Wong Declaration makes very clear that the metadata is simply a record of Plaintiff's activity. He doesn't say what that activity is, and it clearly was not Plaintiff clicking the blocker card. Importantly, neither Wong nor Chena, the two engineers referenced by Mr. Wong in this courtroom, neither of them alleged that they test that they reviewed the source code, which is the only thing that could support this untested inference. Bumble is concerned that a threadbare denial would be sufficient to create a tribal issue and that this would lead to a parade of terribles with Plaintiffs just essentially lying about whether or not they clicked a button. But this case is not just a threadbare denial. He explains why he would have remembered it, because the dates didn't match up. And in addition, we have three other Bumble users who specifically tested the inference, which Bumble provides no evidence for. And those three users, they — those three users did not testify based on the recollection. They testified that they actually opened the app and they checked to see if the blocker card worked as Bumble said it would. And importantly, Bumble itself admitted that it made no changes to the blocker card. And so the other Bumble users' experience within that timeframe is indeed probative of what Plaintiff would have experienced in March of 2021. And so the most likely explanation for why the other Bumble users never saw the blocker card is the same explanation as to why the Plaintiff never saw the blocker card. It's because the blocker card doesn't work as Bumble says it does. But rather than draw a reasonable inference that's supported by the evidence, the district court erred and did exactly the opposite. The district court discounted these other sworn declarations as saying it was only probative of what would have occurred in May 2022, and it was not probative of what Plaintiff experienced in March 2021. And that contradicts the evidence that Bumble submitted. Bumble stated that there were no changes to the blocker card technology between January of 2021 and June of 2022. So that inference is not only unsupported, the court committed a legal error by viewing the facts in the light most favorable to Bumble. If the Court has any other questions. It doesn't appear that we do. Nicely done, counsel. Thank you. The matter is submitted.
judges: NGUYEN, BRESS, Bennett